# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

LEE S.,

 Petitioner,

v.

KRISTI NOEM, *in her capacity as Secretary of the United States Department of Homeland Security*; TODD M. LYONS, *in his official capacity as Acting Director of the United States Immigration and Customs Enforcement*; PAMELA BONDI, *in her official capacity as Attorney General of the United States*; and DAVID EASTERWOOD, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*,

 Respondents.

Case No. 26-cv-1786 (LMP/ECW)

**ORDER DENYING
HABEAS PETITION**

---

Rachel M. Engebretson, **Engebretson Law Firm, P.A., Blaine, MN**, for Petitioner.

Matthew Isihara, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

Petitioner Lee S. was ordered removed from the United States in September 2014, but because Respondents (the "Government") could not effectuate her removal, she was released into the community on an order of supervision ("OSUP"). On March 8, 2026, the Government revoked Lee S.'s OSUP and arrested her the next day. Lee S. brings a petition for a writ of habeas corpus to challenge her immigration detention. ECF No. 1. For the following reasons, the petition is denied.

**BACKGROUND**

Lee S. is a citizen of Laos and national of Thailand who was admitted to the United States as a refugee in November 1979, and she adjusted status to that of a lawful permanent resident in October 1985. ECF No. 6 ¶ 4. However, because of certain qualifying criminal convictions, an immigration judge ordered Lee S. removed to Laos or Thailand in September 2014. *Id.* at 5. But because the Government could not effectuate her removal to Laos or Thailand, it released Lee S. into the community on an OSUP in December 2014. *Id.* at 8–11. As a condition of her OSUP, Lee S. agreed to assist the Government in obtaining necessary travel documents and to appear for removal if necessary. *Id.* at 8.

In February 2026, Immigration and Customs Enforcement ("ICE") submitted a travel document request to Laos for Lee S., and on March 6, 2026, ICE obtained a travel document. *Id.* ¶¶ 9–10. On March 8, 2026, the Government revoked Lee S.'s OSUP, and she was arrested by immigration officials the next day. *Id.* ¶ 11; *id.* at 15. The Government served Lee S. with a "Notice of Revocation of Release," which explained that her OSUP was revoked because it was "appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal. ICE has obtained a travel document and scheduled your removal to take place no later than 04/01/2026." *Id.* On the date of her arrest, ICE conducted an informal interview with Lee S., who denied that the Government had obtained a travel document for her and protested that she had complied with the terms of the OSUP. *Id.* at 18.

Lee S. petitioned for a writ of habeas corpus, alleging that her detention violated federal laws and regulations governing revocation of an OSUP. ECF No. 1 ¶¶ 48–76. The

Court ordered the Government to answer the petition no later than March 16, 2026.  ECF No. 3.  The Government timely responded, ECF No. 5, and Lee S. timely filed a reply brief, ECF No. 7.

**ANALYSIS**

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)).  The protections of habeas corpus extend to those in immigration detention.  *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

Once ICE releases a noncitizen on an OSUP, ICE's ability to re-detain that noncitizen is constrained by its own regulations.  Relevant here, ICE may re-detain a noncitizen released on an OSUP "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  If ICE elects to revoke a noncitizen's release under 8 C.F.R. § 241.13(i)(2), the noncitizen must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."  *Id.* § 241.13(i)(3).

The Government complied with these requirements.  Here, ICE served Lee S. with a "Notice of Revocation of Release" on the day she was detained, which explained that her

3

OSUP was revoked because ICE had obtained a travel document from Laos and had scheduled her removal to occur no later than April 1, 2026. ECF No. 6 at 15. This document "notified [Lee S.] of the reasons for revocation of [] her release." 8 C.F.R. § 241.13(i)(3); *see Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *6 (S.D. Fla. Aug. 8, 2025) (finding 8 C.F.R. § 241.13(i)(3) satisfied when the notice of revocation stated that "ICE has received a Travel Document to affect [the petitioner's] removal"). ICE also afforded an "initial informal interview promptly after [Lee S.'s] return to [ICE] custody to afford [Lee S.] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3); *see* ECF No. 6 at 18. Although Lee S. disputed during her informal interview that ICE had obtained a travel document, *see* ECF No. 6 at 18, evidence in the record definitively suggests otherwise, *see id.* ¶¶ 9–10.[1]

The Government has further demonstrated the existence of "changed circumstances" that creates a "significant likelihood" that Lee S. "may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2); *see Roble v. Bondi*, 803 F. Supp. 3d 766, 772–73 (D. Minn. 2025) (explaining that it is the Government's burden to show changed circumstances under 8 C.F.R. § 241.13(i)(2)). Here, ICE received a travel document for Lee S.'s removal to Laos and has scheduled Lee S.'s removal to take place

---

[1]   In her reply brief, Lee S. questions whether ICE has received a travel document from the Laotian government, *see* ECF No. 7 at 4, but her speculation alone cannot overcome the testimony of Deportation Officer William J. Robinson, who declares under penalty of perjury that ICE has received a travel document from Laos for Lee S., *see* ECF No. 6 ¶ 10. If Lee S. has credible evidence that Robinson's declaration is untruthful, and that ICE has not obtained a travel document from Laos for her removal, she is free to seek reconsideration of this Order.

no later than April 1, 2026.  ECF No. 6 ¶¶ 9–11; *id.* at 15.  That evidence "lends credence to [the Government's] argument that [Lee S.'s] removal is significantly likely to occur in the reasonably foreseeable future, if not imminently." *Kikham S. v. Noem*, No. 26-cv-1621 (LMP/ECW), ECF No. 7 at 5 (D. Minn. Mar. 11, 2026); *see Va V. v. Bondi*, No. 25-cv-2836 (LMP/JFD), ECF No. 17 at 11 (D. Minn. Aug. 11, 2025) ("Laos's issuance of a travel document constitutes changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Kamara v. Oddo*, No. 3:24cv2249, 2025 WL 310131, at *3 (M.D. Pa. Jan. 27, 2025).  The Government has therefore complied with the regulatory requirements to revoke Lee S.'s OSUP.[2]  And because the remainder of Lee S.'s preserved claims rise or fall with the Government's compliance with those regulations, the Court concludes that Lee S.'s constitutional claims and Administrative Procedures Act claims similarly fail.

Lee S. argues in her reply brief that she should be released prior to being removed so that she can "make arrangements (while not detained) for an orderly departure."  ECF No. 7 at 2.  She also argues that ICE should have alerted her when it received the travel document on March 6, 2026, instead of waiting three days and arresting her without advanced notice.  *Id.* at 3–4. But Lee S. cites no legal authority for either argument, and

---

[2]     In her petition, Lee S. also alleged that to the extent that the Government complied with the regulations governing revocation of an OSUP, those regulations are invalid exercises of agency authority. *Id.* ¶¶ 77–83. But Lee S. does not raise that argument in her briefing. *See* ECF No. 7.  Given that no party has briefed this novel issue of law that could invalidate a federal regulation, the Court will not address that issue. *See Riley v. Bondi*, 606 U.S. 259, 273 (2025) ("If a party neglects to raise, concedes, or waives an issue, a court generally has no obligation to consider it.").

the Court cannot discern any authority that would permit Lee S.'s release for the sole purpose of preparing for an "orderly departure." Lee S. finally pleads the injustice of being arrested in front of her nine-year-old child and being removed from this country after living here for 46 years. *Id.* at 3. There is no doubt in the Court's mind that Lee S.'s removal will impose hardships on her and her family, and the Court does not wish, in any way, to minimize those concerns. But the Court's job is to ensure that the Government follows the law, not to ensure that the law is wise or prudent. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 511 (2018) (explaining that judges are "expounders of what the law is" not "policymakers choosing what the law should be"). Because the record substantiates that the Government has complied with the relevant law, Lee S.'s petition must be denied.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Lee S.'s Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED**. This action is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 18, 2026                      *s/Laura M. Provinzino*
                                           Laura M. Provinzino
                                           United States District Judge